IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GERMAINE J GRANT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 11 C 8851 |
| | ) |
| RJM ACQUISITIONS FUNDING, LLC, | ) Judge John Z. Lee |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

Plaintiff Germaine J. Grant has sued Defendant RJM Acquisitions Funding, LLC ("RJM") for violating the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681 *et seq.* by improperly obtaining his credit report. RJM has moved for summary judgment, arguing that it properly obtained his credit report while attempting to collect a $110.59 debt Grant owed for two purchases he made in 1995. For the reasons stated herein, the Court grants RJM's motion.

### Facts

The following facts are undisputed. In 1995, Jermaine Berry of 104 Bowen Place #1, Joliet, Illinois, incurred debts with Fingerhut, a catalog and online retailer, when he made purchases of $63.15 and $47.44. (Def.s' LR 56.1(a)(3) ¶ 1, Ex. A., Fingerhut Statement 1.[1]) Berry did not pay these debts. (*Id.* ¶ 2.)

---

[1] Defendant's LR 56.1(a)(3) ¶ 1 states that "Plaintiff incurred a debt with Fingerhut. . ." and cites an attached Fingerhut Statement listing the $63.15 and $47.44 purchases. (Def.'s LR 56.1(a)(3) ¶ 1, Ex. A, Fingerhut Statement 1.) The Fingerhut Statement is addressed to "Jermaine Berry" of "104 Bowen Place #1, Joliet, Illinois." (*Id.*) Plaintiff does not dispute that "Jermaine Berry" of the listed address incurred debt with Fingerhut, *see* Pl.'s Resp. 1-2, but Plaintiff denies that he incurred debt with Fingerhut because he argues that he is not "Jermaine Berry." (Pl.'s LR 56.1(b)(3)(B) ¶ 1.) The Court addresses this argument in its discussion of Defendant's liability. For purposes of this motion, therefore, the fact that "Jermaine Berry" of the listed address incurred debt with Fingerhut is undisputed. Plaintiff's argument that he is not "Jermaine Berry" also applies to the facts in Def.'s LR

1

On March 18, 2010, RJM sent Berry a letter at 116 Walden Road, Joliet, Illinois, stating that RJM had purchased Berry's debt from Fingerhut. (*Id.* ¶ 3-4, Ex. B, March 2010 RJM Letter to Grant.) The letter also stated that RJM was seeking to collect the debt. (*Id.*)

On April 2, 2010, Plaintiff Germaine Grant sent a letter to RJM demanding that RJM validate the debt within 30 days pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, or cease collection of the debt. (*Id.* ¶ 6, Ex. E, April 2010 Grant Letter to RJM 1-5.) The first sentence of the letter stated that "[t]his is an offer to fully pay/discharge the attached claim of debt on the condition that the claiming parties comply with this notice within 30 days of receipt of this correspondence." (*Id.*) In the letter, Grant listed his address as 116 Walden Road, Joliet, Illinois. (*Id.*)

In January 2011, RJM obtained a copy of Grant's credit report. (*Id.* ¶ 5.) On August 9, 2011, RJM sent Grant a letter denying any FDCPA violations. (*Id.* ¶ 7, Ex. F, August 2011 RJM Letter to Grant 1-2.). The letter also closed the account and absolved Grant from ever having to pay the debt. (*Id.*) On December 14, 2011, Grant sued RJM for improperly obtaining his credit report in violation of the FCRA. RJM has moved for summary judgment.

### **Legal Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has sufficiently demonstrated the absence of a genuine issue of

---

56.1(a)(3) ¶ 4, which state that "RJM sent a letter to Plaintiff" and the attached letter was sent to "Jermaine Berry." (Def.'s LR 56.1(a)(3) ¶ 4.) Plaintiff does not dispute that RJM sent "Jermaine Berry" a letter, he disputes only that he is "Jermaine Berry." (Pl.'s LR 56.1(b)(3)(B) ¶ 4.) Thus, the fact that RJM sent Jermaine Berry a letter in March 2010 is admitted for the purposes of this motion.

material fact, the nonmoving party must then set forth specific facts showing there are disputed material facts that must be decided at trial. *Id.* at 321-22.

## Discussion

Under the FCRA, an individual who obtains "a consumer report . . . under false pretenses or knowingly without a permissible purpose" can be held liable to that consumer. 15 U.S.C. § 1681n(a)(1)(B). A debt collector obtains a consumer's credit report with a permissible purpose when the debt collector "intends to use the information in connection with . . . collection of an account of the consumer." 15 U.S.C. § 1681b(3)(A); *Miller v. Wolpoff & Abramson, LLP*, 309 F. App'x. 40, 43 (7th Cir. 2009) ("because [defendant] was obtaining the [credit] report on behalf of . . . the owner of the debt, [defendant] had a legitimate purpose" under 1681b(3)(A)); *Smith v. John P. Frye, P.C.*, No. 10 C 3366, 2011 WL 748363, at *3 (N.D. Ill. Feb. 24, 2011) ("obtaining a credit report in connection with collection of a debt is a permissible purpose for obtaining a consumer report under the FCRA"); *Criddell v. Transunion LLC*, No. 09 C 6235, 2010 WL 1693093, at *4 (N.D. Ill. Apr. 27, 2010) ("Because Torres was acting as a debt collection agency, it had a legitimate reason to obtain [plaintiff's] credit report"). Moreover, a debt collector permissibly obtains a consumer's credit report if the debt collector has "reason to believe" that the consumer owes the debt. *See Robinson v. Greystone Alliance,* LLC, No. BPG 10-3658, 2011 WL 2601573, at *3 (D. Md. Jun. 29, 2011) (citing *Korotki v. Attorney Servs. Corp. Inc.*, 931 F. Supp. 1269, 1276 (D. Md. 1996)). The debt collector need not have "conclusive proof" that the consumer owes the debt. *Korotoki*, 931 F. Supp at 1276 (citing *Zeller v. Samia*, 758 F. Supp. 775, 781-82 (D. Mass. 1991)).

Here, RJM properly obtained Grant's credit report because it obtained the report while attempting to collect the $110.59 debt it purchased from Fingerhut, and RJM had "reason to

3

believe" that Grant owed the debt. Grant admits that RJM obtained his credit report "to try to collect a debt," and RJM's March 2010 letter stated that it had purchased the Fingerhut debt and was seeking to collect it. (Pl.'s Resp. 2; Def.'s LR 56.1(a)(3) ¶ 3-4.)

Grant disputes, however, that he owed the debt because he contends that he never purchased anything from Fingerhut and that the Fingerhut debt was incurred by "Jermaine Berry," not "Germaine Grant." (Pl.'s Resp. 2.) Although "Jermaine Berry" originally incurred the debt, RJM had "reason to believe" that Grant owed the debt. First, RJM received correspondence regarding the debt from "Germaine Grant" from the same address to which it sent a letter to "Jermaine Berry." In March 2010, RJM notified Jermaine Berry that it had purchased his debt from Fingerhut by mailing Berry a letter at 116 Walden Road, Joliet, Illinois. (Def.'s LR 56.1(a)(3) ¶ 3, Ex. B, March 2010 RJM Letter to Grant 1.) The next month, from the same address, Germaine Grant sent a letter to RJM demanding that RJM validate the debt pursuant to the FDCPA or cease its collection efforts within 30 days. (*Id.* ¶ 6, Ex. E, Grant letter to RJM 1-5.)

Additionally, in the letter, Grant did not claim that he did not owe the debt nor did he claim that he was not "Jermaine Berry." (*Id.*) In fact, the first sentence of the letter states that "[t]his is an offer to fully pay/discharge the attached claim of debt on the condition that the claiming parties comply with this notice within 30 days of receipt of this correspondence." (*Id.*)

Finally, the Court notes that the name "Germaine" differs from "Jermaine" by only one letter. Taken together, these undisputed facts provided RJM with "reason to believe" that Grant owed the debt such that RJM could properly obtain Grant's credit report under the FCRA.[2]

---

[2] RJM attaches to its reply brief excerpts from an identity report on Grant. (Def.'s Reply, Ex. A, Skip Trace Rep. 2.) Because RJM does not indicate that it conducted the report prior to obtaining Grant's credit report, the Court does not rely on the report in determining that RJM had "reason to believe" Grant owed the debt. The Court notes, however, that the identity report excerpts list

**Conclusion**

For these reasons, the Court grants RJM's motion for summary judgment [40]. Civil case terminated.


**SO ORDERED**                                          **ENTER:  6/18/13**


_____
**JOHN Z. LEE**
**U.S. District Judge**

---

"Germaine J Grant," "Jermaine J Grant," "Jermaine Germaine Grant," and "Germaine J Berry" as names by which Germaine Grant is known. (*Id.*)  The report also lists as addresses associated with Grant 104 Bowen Place #1, Joliet, Illinois, the address listed on Jermaine Berry's original Fingerhut statement, and 116 Walden Road, Joliet, Illinois, the address to which RJM sent Berry a letter stating that it had purchased the Fingerhut debt and the address from which Grant responded to RJM's letter. (*Id.* 3.)